IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ASTERIA VIVES                  :            CIVIL ACTION
                               :
     v.                        :
                               :
FRANK RODRIGUEZ, et al.        :            NO. 09-2728

MEMORANDUM

Dalzell, J.                                 January 31, 2012

         Plaintiff Asteria Vives ("Asteria") sues defendants

Frank ("Frank") and Miguelina ("Miguelina") Rodriguez,[1] asserting

claims for breach of contract, unjust enrichment, conversion,

fraud, and intentional infliction of emotional distress ("IIED").

Frank is Asteria's brother, while Miguelina is Frank's wife and

Asteria's sister-in-law.  Asteria's claims arise out of an

alleged agreement between her and the defendants that provided

the defendants would act for a fee as the straw purchasers and

re-sellers of a house Asteria wanted to dispose of.  According to

Asteria, after selling the house, the defendants refused to turn

over the balance from the sale of the property as they had agreed

to do.

         Miguelina filed what she styled a "motion for summary

judgment" last year, as to which Asteria filed a response in

_____

         [1] On June 7, 2010, Judge Fullam -- from whom we
inherited this case last year -- dismissed all claims against
additional defendants Domingo and Milagros Rodriguez.

opposition and Frank filed a memorandum in support.[2]  In large part, however, Miguelina's motion reiterates arguments presented in a prior motion to dismiss that we denied without prejudice. Perhaps more importantly, the parties have not yet engaged in discovery, and have neither jointly submitted a stipulation of undisputed facts nor individually enumerated the factual claims that they can support with specific citations to the record. While the parties make cursory references to the record, the bulk of their arguments concerns the sufficiency of Asteria's claims and the appropriateness of this Court as the forum in which to litigate those claims.

Notwithstanding the manner in which it is styled, we will construe Miguelina's submission as a motion to dismiss predicated on plaintiff's failure to state a claim and this Court's lack of subject matter jurisdiction, and will evaluate it pursuant to Fed. R. Civ. P. 12(b)(1) and (6).  For the reasons enunciated below, we will grant this motion in part, dismissing Asteria's claims for fraud, conversion, and intentional infliction of emotional distress.

---

[2] According to his memorandum, Frank "joins in the Memorandum of Law filed in support of the Motion for Summary Judgment on behalf of defendant, Miguelina Rodriguez, and accepts same as his own."  Frank's Mem. at 1.

I.   **Factual Background**

In ruling on a motion to dismiss under Rule 12(b)(6),[3] a court must "'accept all factual allegations in the complaint as true and give the pleader the benefit of all reasonable inferences that can be fairly drawn therefrom.'"  Ordonez v. Yost, 289 Fed. Appx. 553, 554 (3d Cir. 2008) (quoting Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993)).  In the course of our inquiry, we "'consider only allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim,'" Brown v. Daniels, 128 Fed. Appx. 910, 913 (3d Cir. 2005) (quoting Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004)).  A document forms the basis of a claim if it is "integral to or explicitly relied upon in the complaint."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis and internal quotation marks omitted).  We will thus review the factual allegations of Asteria's complaint.

According to Asteria, she is a resident of Historic LaMott, Pennsylvania, while Frank and Miguelina reside in

---

[3] We will consider, in the next section, Miguelina's argument that we lack subject matter jurisdiction and will canvass the Rule 12(b)(1) standard at that time.

Orlando, Florida.  Pl.'s Compl. ¶¶ 4-5.  Asteria entered into an agreement with Frank and Miguelina on June 1, 2006, in which Frank and Miguelina agreed to serve as the straw purchasers of 7322 Butcher Street, Lamott, Pennsylvania (the "property") on Asteria's behalf.  The agreement provided that: (1) Asteria would provide all funds for purchasing the property and pay for all rehabilitation costs and tax and insurance obligations arising out of the transaction; (2) Frank and Miguelina would pay the net proceeds to Asteria after the property's eventual re-sale; and (3) Asteria would pay Frank and Miguelina a fee of $500.00 upon this sale.  Id. ¶¶ 9-10.  Frank purchased the property on June 14, 2006 for $55,000, with funds Asteria provided.  Id. ¶¶ 11-12.  On August 7, 2006, Frank and Miguelina agreed to act as straw sellers of the property for Asteria, and sold the property on August 10, 2006 for $95,000.00.  Id. ¶¶ 13-14.

Asteria alleges that between October 26, 2006 and May 27, 2007, she repeatedly demanded -- by telephone, e-mail, and mail -- that Frank and Miguelina "tender the remaining balance from the sale." Id. ¶ 15.  Frank and Miguelina responded with a series of excuses for their inability to turn over this balance, finally stating on May 20, 2007 that they would issue a secured payment of $35,000.00 to Asteria if she would provide them with

4

an affidavit stating that she was no longer "using Defendant Frank Rodriguez's power of attorney." Id. ¶¶ 17-18. On May 22, 2007, Asteria provided Frank with an affidavit stating that his "power of attorney [had been] terminated". Nonetheless, Frank and Miguelina continued to ignore Asteria's demands for payment and have not tendered the net balance from the sale of the property, which Asteria contends amounts to $37,159.60. Id. ¶¶ 19-21.

Asteria claims that shortly after Frank and Miguelina received payment for the August 10, 2006 sale of the property, they satisfied the mortgage on their Florida home in large part using the net proceeds from the sale. Id. ¶ 27. According to Asteria, "Frank and Miguelina Rodriguez's promise to immediately and promptly turn over the balance of the sale of 7322 Butcher Street, Historic LaMott, Pennsylvania 19027 to Plaintiff was a material misrepresentation, with scienter, that was part and parcel of a fraudulent scheme to unlawfully secure capitalization for the satisfaction of their Florida mortgage." Id. ¶ 28.

Asteria seeks compensatory damages of $37,159.60 on her claims for breach of contract, unjust enrichment, conversion, and fraud. Id. at 4-6. She also seeks punitive damages of $371,000.00 under Count IV for fraud, and punitive damages of

$250,000.00 and compensatory damages of $250,000.00 under Count V for intentional infliction of emotional distress.  Id. at 7.

## II.  **Analysis**

Section 1332(a)(1) provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between -- (1) citizens of different States," and Rule 12(b)(1) states that "a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction."  Our Court of Appeals has explained that when a challenge is made to diversity jurisdiction based on failure to satisfy § 1332's amount-in-controversy requirement,

> The [party claiming jurisdiction] bears the burden of showing that the case is properly before the federal court.  Where the parties dispute the underlying facts concerning the jurisdictional amount requirement, the [party claiming jurisdiction] must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000.  Thereafter, or if the underlying jurisdictional facts are not in dispute, a federal court must decide whether it appears to a "legal certainty" that the plaintiff is not entitled to recover an amount exceeding the jurisdictional requirement.

Chrin v. Ibrix, Inc., 293 Fed. Appx. 125, 127 (3d Cir. 2008)
(citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283
(1938)).

When a court considers a motion to dismiss pursuant to
Rule 12(b)(6), on the other hand, the test "'is whether, under
any reasonable reading of the pleadings, the plaintiff may be
entitled to relief.'" Kundratic v. Thomas, 407 Fed. Appx. 625,
627 (quoting Holder v. City of Allentown, 220 F.2d 188, 194 (3d
Cir. 1993)) (brackets in original). A plaintiff may not pass
this test merely by offering "labels and conclusions" in the
complaint, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555
(2007), and similarly "[t]hreadbare recitals of the elements of a
cause of action, supported by mere conclusory statements, do not
suffice," Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).
Instead, a complaint's "[f]actual allegations must be enough to
raise a right to relief above the speculative level," Twombly,
550 U.S. at 555, so that there is "more than a sheer possibility
that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at
1949. Essentially, a plaintiff must provide "enough fact[s] to
raise a reasonable expectation that discovery will reveal
evidence of" the necessary element. Twombly, 550 U.S. at 556.

Miguelina advances six arguments in her motion, to wit: (1) once Asteria's legally insufficient claims are removed from consideration, we lack subject matter jurisdiction over this action; (2) there is no cause of action against her; (3) the gist of the action doctrine bars Asteria's fraud and intentional infliction of emotional distress claims; (4) the fraud and intentional infliction of emotional distress claims against Miguelina are insufficiently stated; (5) Asteria has not stated a claim for punitive damages; and (6) this Court should abstain from exercising jurisdiction over this matter under the <u>Colorado River</u> doctrine.  We will consider each argument in turn.

### A.   <u>Miguelina's Challenge to Subject Matter Jurisdiction</u>

Miguelina suggests that "[t]his Court lacks subject-matter jurisdiction over this case because, when Vives' legally-deficient claims for fraud, intentional infliction of emotional distress, and punitive damages are removed from consideration, the amount in controversy does not exceed the amount required by 28 U.S.C. § 1332."  Miguelina's Mem. in Supp. of Mot. ("Miguelina Mem.") at 3.  Asteria responds that "each of Plaintiff's substantive claims are meritorious and greatly exceed the

$75,000.00 minimum amount necessary to satisfy the requirements of 28 U.S.C. Section 1332." Pl.'s Resp. at 5.

As noted above, where the "underlying jurisdictional facts are not in dispute," a court generally resolves a challenge to diversity jurisdiction by determining "whether it appears to a 'legal certainty' that the plaintiff is not entitled to recover an amount exceeding the jurisdictional requirement." Chrin, 293 Fed. Appx. at 127. This situation is somewhat different from the ordinary context in which a Rule 12(b)(1) motion is asserted, however, in that Miguelina claims that we lack jurisdiction in part because Asteria's claimed damages are legally unavailable and in part because her claims are legally insufficient.

As Judge Joyner some time ago explained,

> When determining whether the amount in
> controversy has been satisfied . . . federal
> courts examine plaintiff's damage claims at
> the time that the action is commenced and the
> amount in controversy for jurisdictional
> purposes must be ascertained by the requests
> in the pleadings without consideration of
> success on the merits. Once that
> determination is made and the federal court
> is seized of jurisdiction, the court's power
> is not conditional on a later award of at
> least that amount.

McNulty v. Travel Park, 853 F. Supp. 144, 146 (E.D. Pa. 1994) (citations omitted). Thus, our Court of Appeals has noted that

9

"a judgment dismissing one claim, and leaving only another claim by itself below the jurisdictional minimum amount in controversy, does not affect subject matter jurisdiction, as it is pegged at the time the complaint was filed." B&P Holdings I, LLC v. Grand Sasso, Inc., 114 Fed. Appx. 461, 464 (3d Cir. 2004). See also Suber v. Chrysler Corp., 104 F.3d 578, 583 (3d Cir. 1997) ("[T]he 'legal certainty' standard is a threshold matter that should involve the court in only minimal scrutiny of the plaintiff's claims.  The court should not consider in its jurisdictional inquiry the legal sufficiency of those claims or whether the legal theory advanced by the plaintiffs is probably unsound.").

To be sure, our Court of Appeals has also observed that "[i]n an action originated in federal court, the court must strike a difficult balance where unliquidated damages are involved: a plaintiff's frivolous claim cannot be decisive to establish the jurisdiction of the court, yet jurisdiction cannot be made to depend on the final outcome of the case." Albright v. R.J. Reynolds Tobacco Co., 531 F.2d 132, 134 (3d Cir. 1976). More recently, our Court of Appeals has instructed that "whether the claims are for less than the jurisdictional amount depends on what damages a plaintiff could conceivably recover under state law," and that "when a claim for punitive damages is frivolous .

10

. . that claim must be stricken from the amount in controversy." Onyiuke v. Cheap Tickets, Inc., 435 Fed. Appx. 137, 139 (3d Cir. 2011) (internal quotation marks omitted).  See also, e.g., Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1046 (3d Cir. 1993) ("[W]hen a claim for punitive damages is patently frivolous and without foundation because such damages are unavailable as a matter of law, that claim must be stricken from the amount in controversy.") (internal quotations marks omitted).

        Based on this jurisprudence, we conclude that a plaintiff may fail to satisfy the amount in controversy requirement of § 1332 despite claiming damages in excess of the minimum amount either because (1) she has asserted claims that are so legally insufficient as to be frivolous, or (2) some of her claims for damages are frivolous under the applicable law. Here, while we ultimately conclude that Asteria has fallen far short of stating a claim for intentional infliction of emotional distress, we will dismiss her claim for fraud based on a close reading of conflicting case law regarding the gist of the action doctrine and, secondarily, due to her failure to plead a requisite element of fraud.  Under these circumstances, her fraud claim is not so weak as to descend to the level of frivolity.

For us to conclude that we lack subject matter jurisdiction over this case, we would have to find that Asteria's claim for punitive damages based upon her fraud claim is frivolous, so that -- after removing from consideration her frivolous IIED claim and frivolous claim for punitive damages based upon fraud -- she would be left with only a valid claim for compensatory damages in the amount of $37,159.60.  We cannot find such frivolity, though Miguelina argues that "Vives' claim for punitive damages is not sufficiently stated."  Miguelina Mem. at 10 (capitalization omitted).

The Pennsylvania Superior Court has explained that "[t]he rule of punitive damages set forth in the Restatement (Second) of Torts § 908 has been adopted in Pennsylvania," Moran ex rel. Moran v. G & W.H. Corson, Inc., 586 A.2d 416, 422 (Pa. Super. 1991), under which "'[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.'" Id. (quoting Restatement (Second) of Torts § 908(2)).  In the particular case of fraud, "[t]he rule . . . is that for punitive damages to be awarded there must be acts of malice, vindictiveness and a wholly wanton disregard of the rights of others." Smith v. Renaut, 564 A.2d 188, 193 (Pa. Super. 1989).

12

However, "though this rule seems to require the plaintiff to meet an additional burden, it is difficult to picture a fact pattern which would support a finding of intentional fraud without providing proof of 'outrageous conduct' to support an award of punitive damages." Delahunty v. First Pennsylvania Bank, N.A., 464 A.2d 1243, 1263 (Pa. Super. 1983).

In this case, Asteria alleges that Frank and Miguelina entered into their agreement with her as "part and parcel of a fraudulent scheme to unlawfully secure capitalization for the satisfaction of their Florida mortgage." Pl.'s Compl. ¶ 28. Though we ultimately find that Asteria has failed to state a claim for fraud, and that it would be futile to permit her to amend the complaint in light of the operation of the gist of the action doctrine, we cannot conclude that her claim for punitive damages based upon Frank and Miguelina's alleged intentional fraud is so frivolous that it should not be aggregated with her other damages claims to determine the amount in controversy. Thus, when Asteria's non-frivolous claims are summed, we are left with an amount in controversy of $408,159.60 -- leaving us with subject matter jurisdiction over this case under § 1332.

13

B.   **The Sufficiency of the Claims Against Miguelina**

Turning to Miguelina's attacks on Asteria's claims, she first argues that "Plaintiff's Complaint on its face does not state a cause of action against Miguelina Rodriguez," Miguelina Mem. at 19, and that "[o]ther than bare allegations of alleged fraud, there is no proof of Miguelina's role in any of the transactions." Id. at 19-20.  Asteria responds that "[c]ontrary to Defendant Miguelina Rodriguez's assertion that there is no evidence establishing that she agreed to be a straw purchaser/seller on behalf of Plaintiff, several witnesses, including Stewart Price and Carmen Santiago were present during discussions between Plaintiff and Defendants, Frank and Miguelina Rodriguez, wherein both Defendants agreed to become Plaintiff's straw purchasers and sellers for the 7322 Butcher Street property."  Pl.'s Resp. at 4.

We will consider Asteria's fraud, conversion, and intentional infliction of emotional distress claims against Miguelina in greater detail below, and will now examine only her claims for breach of contract and unjust enrichment.  Miguelina's challenge to these claims has a hybrid character, as she asserts not only that Asteria has failed to state these claims, but that she has adduced no evidence in support of these claims.  As we

14

have already noted, the parties have not yet engaged in discovery in this matter, so we will not rule on Miguelina's challenge to the sufficiency of the evidence supporting Asteria's claims.[4]

With respect to whether Asteria has <u>stated</u> these claims, we note that to make a breach of contract claim under Pennsylvania law a plaintiff must allege "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." <u>Omicron Systems, Inc. v. Weiner</u>, 860 A.2d 554, 564 (Pa. Super. 2004) (brackets and internal quotation marks omitted).  In her complaint, Asteria alleges that "[o]n June 1, 2006, the Plaintiff, Asteria Vives, entered into an agreement with the Defendants, Frank and Miguelina Rodriguez," which provided that Frank and Miguelina would act as straw purchasers and re-sellers of the 7322 Butcher Street property and pay the net proceeds of the re-sale to Asteria.  Pl.'s Compl. ¶¶ 9-10.  Asteria alleges that these defendants "breached the agreement by failing to

_____

[4] Asteria has supplied affidavits from witnesses who were allegedly privy to conversations in which "Frank & Miguelina agreed to become Asteria's signees for the 7322 Butcher Street property," Ex. D to Pl.'s Resp. (Aff. of Stewart Price), and "talk[ed] about an agreement and power-of-attorney they would both sign," <u>Id.</u> (Aff. of Carmen Santiago) -- though both affidavits only state that Frank ultimately signed the agreement. <u>See</u> <u>id.</u>

tender the remaining net balance of sale of the property."  Id. ¶
20.  Notwithstanding these allegations, Miguelina asserts that
"all of the Agreements that are attached to the Complaint speak
only to a potential relationship between the Plaintiff and Frank
Rodriguez."  Miguelina Mem. at 20.   Though Asteria claims in her
complaint to have attached the June 1, 2006 agreement as Exhibit
A, our examination reveals that this exhibit is missing, and
neither party has attached the agreement to more recent
submissions.  Under these circumstances,[5] we conclude that
Asteria has stated a claim for contract breach against Miguelina.

     As for the unjust enrichment claim,[6] its elements "are

_____

     [5] In any event, Miguelina has not explained why the
existence of a written agreement between Asteria and Frank would
negate any independent agreement between Asteria and Miguelina.

     [6] While the Pennsylvania Supreme Court has "found the
quasi-contractual doctrine of unjust enrichment inapplicable when
the relationship between parties is founded on a written
agreement or express contract," Schott v. Westinghouse Elec.
Corp., 259 A.2d 443, 448 (Pa. 1969), Fed. R. Civ. P. 8(d)(3)
provides that "[a] party may state as many separate claims or
defenses as it has, regardless of consistency."  As a
consequence, "[a] plaintiff is permitted to plead alternative
theories of recovery based on breach of contract and unjust
enrichment in cases where there is a question as to the validity
of the contract in question." Premier Payments Online, Inc. v.
Payment Systems Worldwide, 2011 WL 3652442, at *5 (E.D. Pa. 2011)
(Baylson, J.) (internal quotation marks omitted).  Since
defendants have not conceded the enforceability of the underlying
agreement here, Asteria is not barred from asserting a claim for
                                        (continued...)

benefits conferred on defendant by plaintiff, appreciation of

such benefits by defendant, and acceptance and retention of such

benefits under such circumstances that it would be inequitable

for defendant to retain the benefit without payment of value."

Braun v. Wal-Mart Stores, Inc., 24 A.3d 875, 896 (Pa. Super.

2011) (internal quotation marks omitted).  Asteria alleges that

she provided funds to Frank to purchase the Butcher Street

property in June of 2006, Pl.'s Compl. ¶ 11, that Frank and

Miguelina never remitted to her the balance from the re-sale of

the property, id. ¶ 20, and that Frank and Miguelina satisfied

the mortgage on their home using the proceeds from this sale.

Id. ¶ 27.  Asteria has thus stated a claim for unjust enrichment

against Miguelina (and Frank), and we will deny Miguelina's

motion insofar as it seeks the dismissal of Counts I and II.

     **C.**     **The Gist of the Action Doctrine**

     Miguelina next asserts that "Vives' claims for fraud

and intentional infliction of emotional distress are barred by

the gist-of-the-action doctrine because the conduct from which

the alleged liability arises really stems from a breach of

_____

     [6](...continued)
unjust enrichment.

17

contractual duties," Miguelina Mem. at 5 (emphasis in original), and that "[f]or all the reasons stated herein, the gist-of-the-action doctrine also bars Vives' conversion claim." Id. at n.4. Asteria responds that "the gravamen of Plaintiff's fraud calim [sic] involves Defendants' Miguelina and Frank Rodriguez's fraudulent inducemnt [sic] of Plaintiff into th [sic] agreement, wherein they misrepresented their intention to be straw purchasers and sellers, not the contract itself." Pl.'s Resp. at 13. She adds that with respect to her conversion and IIED claims, "Defendants' egregious misconduct in violating the sacred trust of family and outright stealing funds that he [sic] was entrusted are breaches of social policy and fundamental morality which are separate and apart from the terms of his [sic] agreement with Plaintiff, and therefore collateral to his [sic] breach of contract." Id. at 16-17.

As Judge McVerry noted last year, "[t]he Pennsylvania Supreme Court has not expressly adopted the gist of the action doctrine," though "both the United States Court of Appeals for the Third Circuit and the Pennsylvania Superior Court have predicted it would do so." PPG Indus., Inc. v. Generon IGS, Inc., 760 F. Supp. 2d 520, 527 n.1 (W.D. Pa. 2011). Generally speaking, "the 'gist of the action' doctrine . . . operates to

preclude a plaintiff from re-casting ordinary breach of contract claims into tort claims." Hart v. Arnold, 884 A.2d 316, 339 (Pa. Super. 2005).  With respect to Asteria's conversion claim, both Pennsylvania intermediate courts and courts of this Circuit have made clear that where a tortious claim for conversion is based solely on the failure to perform under a contract, it is barred by the gist of the action doctrine.  See, e.g., Pittsburgh Constr. Co. v. Griffith, 834 A.2d 572, 584 (Pa. Super. 2003) ("[T]he basis of the duty allegedly breached by [defendants], their duty to pay [plaintiff] according to the draw schedule, was created by and defined by the contract itself. . . . [W]e will not permit [plaintiff] to interject a claim for tortious conversion into an action that is decidedly contractual."); Brown & Brown, Inc. v. Cola, 745 F. Supp. 2d 588, 623-24 (E.D. Pa. 2010) (Buckwalter, J.) (applying gist of the action doctrine to bar conversion claim where plaintiff had no express property interest in subject of conversion claim, but its rights were governed solely by contract).

Since Asteria's conversion claim is predicated exclusively upon Frank and Miguelina's failure to restore to Asteria "the balance of the sale of the property" under the alleged agreement, Pl.'s Compl. ¶ 25, we will grant Miguelina's

19

request to dismiss Count III of the complaint.  As for Asteria's
IIED claim, the rationale underlying the gist of the action
doctrine (to which we turn in a moment) suggests that it might
act to bar this claim -- but we have found little case law from
either Pennsylvania or Third Circuit courts on this point.  <u>See</u>,
<u>e.g.</u>, <u>Legion Ins. Co. v. Doeff</u>, 2001 WL 1807931, at *3 (Pa. Com.
Pl. 2001) (finding that gist of the action doctrine did not bar
intentional infliction of emotional distress claim); <u>Russo v.
Diocese of Greensburg</u>, 2010 WL 3656628, at *3 (W.D. Pa. 2010)
(Lancaster, C.J.) (permitting intentional infliction of emotional
distress to proceed to discovery notwithstanding gist of the
action doctrine).  Because our analysis below in Section II.D
demonstrates that Asteria has in any case failed to state an
intentional infliction of emotional distress claim, we will
decide this point on that basis, instead.

We thus come to the essential (and thorny) question we
must confront in applying the gist of the action doctrine to the
facts of this case: whether (and when) the gist of the action
doctrine applies to bar fraudulent inducement claims.  The
Pennsylvania Supreme Court has not discussed this issue, and
state intermediate courts and courts from within this Circuit

have not spoken on it with one voice.[7]  As our Court of Appeals has explained, "[w]hen a state's highest court has not spoken on a subject, we must attempt to predict how that tribunal would rule.  In making such determinations, we give due deference to the decisions of lower Pennsylvania courts.  The rulings of intermediate appellate courts must be accorded significant weight and should not be disregarded absent a persuasive indication that the highest state court would rule otherwise." U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co., 80 F.3d 90, 93 (3d Cir. 1996) (citations omitted).  Judge Van Antwerpen has emphasized, however, that "[l]ower state court decisions are persuasive, but not binding, on the federal court's authority," Air Prods. & Chems., Inc. v. Eaton Metal Prods. Co., 256 F. Supp. 2d 329, 333 (E.D. Pa. 2003), and our Court of Appeals has suggested that we should also consult "federal appeals and district court cases interpreting state law; and . . . decisions from other jurisdictions that have discussed the issues we face here."

---

[7] Indeed, Judge Sloviter has ruefully noted the perils of her Court's "Erie guesses".  See Dolores K. Sloviter, A Federal Judge Views Diversity Jurisdiction Through the Lens of Federalism, 78 Va. L. Rev. 1671, 1679-81 n. 53 (1992), where Judge Sloviter discusses the difficulty of making "Erie guesses" and cites specific cases in which federal predictions of state supreme courts' rulings proved incorrect.

<u>Hughes v. Long</u>, 242 F.3d 121, 128 (3d Cir. 2001).  We will thus focus on decisions from Pennsylvania's intermediate courts and courts of this Circuit in predicting how the Pennsylvania Supreme Court might apply the gist of the action doctrine here.

In the seminal case applying the gist of the action doctrine to fraud claims in Pennsylvania courts, the Superior Court of Pennsylvania drew on precedent from both the Superior Court and federal courts within this Circuit to explain that

> [A]lthough mere non-performance of a contract
> does not constitute a fraud, it is possible
> that a breach of contract also gives rise to
> an actionable tort.  To be construed as in
> tort, however, the wrong ascribed to
> defendant must be the gist of the action, the
> contract being collateral.  The important
> difference between contract and tort actions
> is that the latter lie from the breach of
> duties imposed as a matter of social policy
> while the former lie for the breach of duties
> imposed by mutual consensus.  In other words,
> a claim should be limited to a contract claim
> when the parties' obligations are defined by
> the terms of the contracts, and not by the
> larger social policies embodied by the law of
> torts.

<u>eToll, Inc. v. Elias/Savion Adver., Inc.</u>, 811 A.2d 10, 14 (Pa. Super. 2002) (internal quotation marks, citations and brackets omitted).  Observing that "[t]o date, no Pennsylvania state appellate case has addressed the interplay between fraud and the gist of the action doctrine," <u>id.</u> at 15-16, the Court canvassed

federal cases on the subject before summarizing them thusly: "the cases seem to turn on the question of whether the fraud concerned the performance of contractual duties.  If so, then the alleged fraud is generally held to be merely collateral to a contract claim for breach of those duties.  If not, then the gist of the action would be the fraud, rather than any contractual relationship between the parties."  Id. at 19.  The Superior Court consequently concluded that "until our Supreme Court holds otherwise, the gist of the action doctrine should apply to claims for fraud in the performance of a contract."  Id. at 20. Importantly, eToll noted that Judge Van Antwerpen, then of this District, had "suggested that fraud in the inducement of a contract would not necessarily be covered by [the] doctrine because fraud to induce a person to enter into a contract is generally collateral to (i.e., not 'interwoven' with) the terms of the contract itself."  Id. at 17 (emphasis in original) (citing Foster v. Northwestern Mutual Life, 2002 WL 3199114, at *17 (E.D. Pa. 2002)).

        Not long after eToll, our Court of Appeals similarly concluded that "[a]lthough the Pennsylvania Supreme Court has not expressly adopted this doctrine, we predict that the state supreme court would adopt the doctrine as set out in the Superior

Court's cases," Williams v. Hilton Group PLC, 93 Fed. Appx. 384, 385 (3d Cir. 2004), though the Court stressed that "the 'gist of the action' doctrine cannot be captured by any precisely worded test.  Instead, the doctrine appears to call for a fact-intensive judgment as to the true nature of a claim." Id. at 386.  Our Court of Appeals then concluded that although the plaintiff "contend[ed] that his fraud claims are not for fraud in the performance of a contract but are akin to claims for fraud in the inducement because [the defendant] 'induced [the plaintiff] into signing the Letter of Intent and dealing with [the defendant] by lying about its intent to honor the agreement,'" id. (quoting Appellant's Br.), it was nonetheless true that "the 'gist' of Williams's claims sounds in contract, not tort." Id. at 387. Judge Becker dissented, asserting that "where, as here, there was fraudulent intent, i.e. a subjective and undisclosed intent not to perform, a fraud claim is stated." Id. at 389-90.

In the years since Williams, a number of district courts in this Circuit have concluded that the gist of the action doctrine may apply to bar not only claims relating to the fraudulent performance of a contract, but fraudulent inducement to enter into such a contract where the false representation concerned duties later enshrined in the contract -- which would

24

necessarily include representations as to the defendant's intent

to perform.  See, e.g., Integrated Waste Solutions, Inc v.

Goverdhanam, 2010 WL 4910176, at *11 (E.D. Pa. 2010) (Buckwalter,

J.) ("Where the precontractual statements that are the basis for

the fraudulent inducement claim concern specific duties that the

parties later outlined in the alleged contract, courts have

repeatedly dismissed such claims as sounding in contract and,

thus, barred by the gist of the action doctrine.") (collecting

cases from the Third Circuit and Eastern District of

Pennsylvania); Guy Chemical Co., Inc. v. Romaco N.V., 2009 WL

840386, at *15 n.7 (W.D. Pa. 2009) (Gibson, J.) ("Plaintiff does

not allege the existence of further representations that were not

later included in the contract.  Therefore, the gist of the

action doctrine can and does apply to Plaintiff's claims [for

fraudulent inducement].").  In any event, cases have stressed

that "the particular theory of fraud -- whether it lies in

inducement or performance -- is not dispositive," Guy Chemical

Co., Inc. v. Romaco N.V., 2007 WL 184782, at *6 (W.D. Pa. 2007)

(Gibson, J.), and that "the test to be applied to claims of fraud

in the inducement remains the same as that set forth in eToll,

and the focus of analysis under this doctrine is whether actions

lie from a breach of the duties imposed as a matter of social

25

policy or from the breach of duties imposed by mutual consensus pursuant to contract." Onconome, Inc. v. Univ. of Pittsburgh, 2009 WL 5064481, at *11 (W.D. Pa. 2009) (Schwab, J.). See also Clark v. EMC Mortgage Corp., 2009 WL 229761, at *4 (E.D. Pa. 2009) (Rufe, J.) ("Since eToll, courts have established few bright-line rules in the area, but rather have explored, on a case-by-case basis, the applicability of the gist of the action doctrine to claims of fraud that relate to party contracts, including claims of fraud in the inducement of such contracts.").

In 2004, however -- almost a year after our Court of Appeals decided Williams, and two years after eToll -- the Pennsylvania Superior Court concluded that "the law appears to permit fraud in the inducement claims in disputes involving contractual obligations, notwithstanding that the gist of the action doctrine would bar claims of fraudulent (non)performance." The Brickman Grp., Ltd. v. CGU Ins. Co., 865 A.2d 918, 928 (Pa. Super. 2004). That court left unclear, however, whether it considered the gist of the action doctrine to be inapplicable to all fraudulent inducement claims or only some, and ultimately dismissed the claims at issue on different grounds.

A few months later, the Superior Court examined fraudulent inducement claims once again, in a context where

26

"Appellant alleged that Appellee fraudulently and/or negligently agreed to perform obligations that it never intended to perform in order to induce Appellant to agree to the proposed changes to his compensation package and to forgo an immediate resignation." Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 719 (Pa. Super. 2005).  After noting that "[the eToll court] observed that the gist-of-the-action doctrine would not necessarily bar a fraud claim stemming from the fraudulent inducement to enter into a contract," the Superior Court concluded that "since Appellant's tort claims relate to the inducement to contract, they are collateral to the performance of the contracts and therefore, are not barred by the gist-of-the action doctrine."  Id.

And just two years ago the Superior Court confronted a case in which "the facts demonstrate[d] that [the defendant] never intended to perform the duties he agreed to." Mirizio v. Joseph, 4 A.3d 1073, 1087 (Pa. Super. 2010).  Citing Sullivan, the court concluded that the defendant's "actions constituted fraud in the inducement, and therefore, the claim for fraud and misrepresentation was not barred by the gist of the action doctrine," id. at 1085, since "the performance of [the defendant's] duties under the agreement was collateral to this fraudulent scheme." Id. at 1087.

27

In light of _Sullivan_, Judge Lenihan has revisited our
Court of Appeals's ruling in _Williams_, concluding that

> [T]he _Williams_ Court did not have the benefit
> of the Superior Court's subsequent decision
> in _Sullivan_, which permitted a claim for
> fraud in the inducement predicated upon the
> same promises that it found to be sufficient
> to make out a contract claim. . . . This
> conclusion undercuts the majority holding in
> _Williams_, and supports the dissent's view
> that under the Pennsylvania cases, where
> there is "fraudulent intent, i.e. a
> subjective and undisclosed intent not to
> perform, a fraud claim is stated."

_Digital Encoding Factory, LLC v. Iron Mountain Info._, 660 F.
Supp. 2d 608, 623 (W.D. Pa. 2009) (quoting _Williams_, 93 Fed.
Appx. at 390 (Becker, J., dissenting)).  But our Court of Appeals
_has_ had the opportunity to revisit this question following
_Brickman_, _Sullivan_, and _Digital Encoding Factory_.  Just six days
before _Mirizio_, in a case in which the court below "concluded
that 'the misrepresentation here was with respect to fraud in the
inducement,'" our Court of Appeals explained that

> Those findings, however, do not resolve the
> gist of the action issue.  That test, as its
> name suggests, requires the court to focus on
> the substance of the dispute, or, more
> colloquially, to ask the question, 'What's
> this case really about?'  The doctrine deals
> less with specific enumerated 'duties' than
> with the parties' conduct as it relates to
> the contract and the tort alleged.  There
> remains for consideration, then, whether the

28

> fraud in the inducement was collateral to
> Contract One and, moreover, whether the
> parties ever incorporated the
> misrepresentation into the terms of either
> contract.

Pediatrix Screening, Inc. v. Telechem Int'l, Inc., 602 F.3d 541,

550 (3d Cir. 2010) (internal citation omitted).  The Pediatrix

panel was not unaware of Sullivan, observing parenthetically that

the Superior Court in that case held that "separate fraud claim

not barred when defendant 'fraudulently . . . agreed to perform

obligations that it never intended to perform in order to induce'

plaintiff into entering into contract."  Id. at 549 (ellipsis in

original).

          We are thus left in a quandary.  Courts of this

Circuit, including our Court of Appeals, have predicted that the

Pennsylvania Supreme Court would apply the gist of the action

doctrine to bar fraudulent inducement claims where the

misrepresentations in question concern duties later incorporated

into a contract.  Furthermore, these courts have warned against

relying on the distinction between fraudulent inducement and

fraudulent performance claims to determine whether to apply the

doctrine.  The foundational Pennsylvania Superior Court case on

the subject -- eToll -- held only that "the gist of the action

doctrine should apply to claims for fraud in the performance of a

contract," 811 A.2d at 20, and supplied no express holding as to fraudulent inducement claims.  But recent Superior Court decisions have apparently concluded that all fraudulent inducement claims are left unbarred by the doctrine.

We ultimately side with the authority from our Circuit, and predict that the Pennsylvania Supreme Court would find fraudulent inducement claims predicated upon misrepresentations as to a party's intent to perform under a contract to be barred by the gist of the action doctrine.  To begin, language from eToll -- which, since it was decided, has served as the Urtext in both federal and state court for essentially all cases applying the gist of the action doctrine under Pennsylvania law -- explains that application of the doctrine should "turn on the question of whether the fraud concerned the performance of contractual duties," whereupon "the alleged fraud is generally held to be merely collateral to a contract claim for breach of those duties."  Id. at 19.  There can be little doubt that a misrepresentation as to a party's intent to perform contractual duties "concern[s] the performance of contractual duties."

eToll further suggests that the gist of the action doctrine bars claims "arising solely from a contract between the parties" where "the liability stems from a contract" or "the tort

30

claim essentially duplicates a breach of contract claim." Id. (internal quotation marks omitted). As the Pennsylvania Superior Court has explained, "[t]he elements of fraudulent misrepresentation are as follows: (1) A representation (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and, (6) the resulting injury was proximately caused by the reliance." Ira G. Steffy & Son, Inc. v. Citizens Bank of Pa., 7 A.3d 278, 290 (Pa. Super. 2010). We have already rehearsed the elements of a cause of action for breach of contract: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." Omicron Systems, 860 A.2d at 564 (brackets and quotation marks omitted). If a plaintiff can demonstrate that the defendant knew, at the time a contract was entered, that he did not intend to perform under that contract -- thus satisfying the third element of a fraudulent misrepresentation claim -- then success in proving the elements of a claim for breach would necessarily produce success

31

in prosecuting a fraud claim.[8]  Similarly, an inability to prove

a contract claim -- whether because no agreement was concluded,

no breach occurred, or no injury resulted -- would doom any fraud

claim based on misrepresentation of the intent to perform.  Once

a plaintiff proved that a defendant intended not to perform under

a contract, any fraud claims would precisely duplicate any

contract claims.[9]  Given this congruency between fraudulent

inducement claims predicated on the intent to perform under a

contract and claims for breach of that contract, eToll suggests

that the former claims are barred by the gist of the action

doctrine.

------------------------------

[8] The concluding of a contract -- the first element of
a contract claim -- between a plaintiff and a defendant who
intended not to perform would by itself prove the first five
elements of a fraud claim as it would necessarily (1) involve a
representation that the defendant intended to perform that (2)
was certainly material and (3) false, and there could be little
doubt that (4) the plaintiff relied on this representation in
entering the contract, and (5) the defendant intended the
plaintiff so to rely.  Proof of the second and third elements of
a contract claim -- a breach leading to damages -- would
demonstrate resultant injury, or the sixth element of a fraud
claim.

[9] This situation would not equally obtain when a
misrepresentation pertains to terms not incorporated into a
contract, since such a misrepresentation would be actionable even
if no contract breach occurred.

This conclusion is consonant with decisions from this Circuit explaining that misrepresentations as to duties later enshrined in a contract are barred by the doctrine.  While it is true that these decisions conflict with recent Superior Court rulings holding that fraudulent inducement claims may be predicated upon a party's intent not to perform, those rulings appear to be based on a blanket exemption of all fraudulent inducement claims from the scope of the gist of the action doctrine.  This categorical exception does not accord well with the measured tones of <u>eToll</u> -- which, as the <u>Sullivan</u> court itself noted, merely "observed that the gist-of-the-action doctrine would not <u>necessarily</u> bar a fraud claim stemming from the fraudulent inducement to enter into a contract," 873 A.2d at 719 (emphasis added) -- and was justified only in passing by the courts involved.  Under these circumstances, we think it wiser to follow the guidance of <u>eToll</u> and the courts of our Circuit -- a decision fortified by our Court of Appeals's recognition that "even if we were torn between two competing yet sensible interpretations of Pennsylvania law . . . we should opt for the interpretation that restricts liability, rather than expands it, until the Supreme Court of Pennsylvania decides differently." <u>Werwinski v. Ford Motor Co.</u>, 286 F.3d 661, 680 (3d Cir. 2002).

33

We thus conclude that the Pennsylvania Supreme Court would likely hold that fraudulent inducement claims based upon a party's alleged misrepresentation as to its intent to perform under a contract are barred by the gist of the action doctrine. As a result, we will grant Miguelina's motion insofar as it seeks dismissal of Count IV of Asteria's complaint.

### D.    **Asteria's Claims for Fraud, IIED and Punitive Damages**

Miguelina argues that "[e]ven if Vives' fraud and intentional-infliction-of-emotional-distress claims are <u>not</u> barred by the gist-of-action doctrine, they are still legally deficient because they are not sufficiently stated."  Miguelina Mem. at 8.  Asteria responds that her "fraud claim meets the particularity requirement of Rule 9(b)," since her "Complaint states the dates upon which Co-Defendant Frank Rodriguez, under false pretenses, agreed to act as straw buyer and seller, thereby specifying the time, speaker and content of the alleged misrepresentations."  Pl.'s Resp. at 11.  Asteria suggests, regarding her IIED claim, that "Miguelina and Frank Rodriguez, who swindled Plaintiff out of the proceeds of the sale of 7322 Butcher Street, LaMott, Pennsylvania are Plaintiff's brother-in-law [<u>sic</u>] and brother, respectively.  Certainly, to exploit the

34

inherent trust arising out of a sibling relationship for pecuniary gain is atrocious and utterly intolerable in a civilized society."   Id. at 15.

We have already explained that the gist of the action doctrine bars Asteria's fraud claim, and thus have dismissed Count IV of the complaint.  As Miguelina correctly notes, however, we could alternatively dismiss this count due to Asteria's failure to state a claim.  Asteria claims that she has concretely alleged the time, content, and speaker of the misrepresentations that allegedly give rise to her fraud claim, but with respect to the third element of such a claim -- that a misrepresentation was "made falsely, with knowledge of its falsity or recklessness as to whether it is true or false," Ira G. Steffy, 7 A.3d at 290 -- Asteria merely asserts that defendants' "promise to immediately and promptly turn over the balance of the sale of [the property] to Plaintiff was a material misrepresentation, with scienter."  Pl.'s Compl. ¶ 28.

While Fed. R. Civ. P. 9(b) provides only that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged

generally," the Supreme Court explained in <u>Iqbal</u>, 129 S. Ct. at 1954, that

> "[G]enerally" is a relative term.  In the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake.  Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard.  It does not give him license to evade the less rigid -- "though still operative" -- strictures of Rule 8.

Asteria's bald allegation that Frank and Miguelina's promise to perform was "a material misrepresentation, with scienter" falls short of the Federal Rules of Civil Procedure's pleading requirements, since "mere conclusory statements . . . do not suffice" to make out a claim.  <u>Id.</u> at 1949.  And although Asteria alleges that "[s]hortly after receiving payment for the August 10, 2006 sale of the property, Defendants . . . satisfied the mortgage of their Florida home in large measure through proceeds from the net balance of the sale" of the property, Pl.'s Compl. ¶ 27, this allegation does not create "more than a sheer possibility," <u>Iqbal</u>, 129 S. Ct. at 1949, that defendants knowingly or recklessly misrepresented their intent to perform <u>on June 1, 2006</u>.  Ultimately, Asteria has presented no factual allegations suggesting that Frank and Miguelina knowingly misrepresented their intent to perform when they entered into

36

their alleged agreement with Asteria.[10]  Even if we had not

dismissed Count IV pursuant to the gist of the action doctrine,

we would still dismiss it as insufficiently stated.[11]

As for Asteria's IIED claim, a plaintiff may recover

for such a claim only if a defendant's conduct was "'so

outrageous in character, and so extreme in degree, as to go

beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized society.'"  Cox

v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988) (quoting

Buczek v. First National Bank of Mifflintown, 531 A.2d 1122, 1125

(Pa. Super. 1987)).  Outrageousness occurs only where "the case

is one in which the recitation of the facts to an average member

of the community would arouse his resentment against the actor,

_____

[10] In her response to Miguelina's motion, Asteria
asserts that "Raymond Cintron was informed by Milagros Rodriguez
that Defendants posed as straw purchasers and sellers for the
explicit purpose of embezzling from the proceeds of the sale of
7322 Butcher Street to pay off their Florida Mortgage."  Pl.'s
Resp. at 5 (citing Exhibit E to Pl.'s Resp.).  However, Asteria's
assertion misrepresents the contents of Cintron's affidavit,
which states only, in relevant part, that "Milagros admitted that
she and her husband Domingo had knowledge of Frank & Miguelina's
act in September of 2006. . . . Milagros agreed that using
Asteria's money was unlawful."  Ex. E to Pl.'s Resp.

[11] Though Asteria _might_ succeed in alleging the
requisite elements of fraud _were_ she to amend her complaint,
given our dismissal of these claim pursuant to the gist of the
action doctrine such an amendment would be futile.

and lead him to exclaim, 'Outrageous!'"   Hunger v. Grand Cent.
Sanitation, 670 A.2d 173, 177 (Pa. Super. 1996).   Quite simply,
Frank and Miguelina's alleged failure to return nearly $40,000 to
Asteria pursuant to a contractual arrangement falls far short of
the outrageousness that Hunger requires.   We understand that
Asteria's distress in this case is intensified by her familial
relationship with the defendants, but it is hard for us to
imagine any situation in which the simple failure to transfer
funds under a contract would support an IIED claim.   We will thus
dismiss Count V of her complaint for failure to state a claim.

       We are therefore left only with Asteria's breach of
contract and unjust enrichment claims against Frank and
Miguelina.   Asteria makes no claim for punitive damages under
these counts, but in the interests of thoroughness we stress that
under Pennsylvania law "punitive damages . . . are not available
for breach of contract claims and quantum meruit claims."
Sunburst Paper, LLC v. Keating Fibre Int'l, Inc., 2006 WL
3097771, at *4 (E.D. Pa. 2006) (Padova, J.) (citations omitted).

    E.    **Abstention Under the *Colorado River* Doctrine**

       Miguelina urges that "in light of the almost-identical
State Action that is currently pending in the Montgomery County

Court of Common Pleas (which Vives commenced over 16 months ago)," "this Court should . . . abstain from exercising its jurisdiction in accordance with the Colorado River Abstention Doctrine."  Miguelina Mem. at 13.  Asteria responds that "this Court's abstention from exercising jurisdiction would be wholly improper where the state and federal claims are not parallel, as the federal claim includes tort claims, which were not raised in the state complaint, and there are not sufficient exceptional circumstances to warrant abstention."  Pl.'s Resp. at 19.

In Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976), the Supreme Court observed that "'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal Court having jurisdiction,'" id. at 817 (quoting McClellan v. Carland, 217 U.S. 268, 282 (1910)), and noted that "the virtually unflagging obligation of the federal courts [is] to exercise the jurisdiction given them."  Id.  The Court explained that "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention," but allowed that these "exceptional" circumstances "do nevertheless exist."  Id. at 818.

39

As our Court of Appeals has explained, "[w]hether abstention is appropriate [under Colorado River] is a two-part inquiry." Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 307 (3d Cir. 2009). "The threshold requirement for a district court to even entertain abstention is a contemporaneous parallel judicial proceeding. For judicial proceedings to be parallel, there must be identities of parties, claims, and time. . . . We have never required complete identity of parties for abstention." IFC Interconsult, AG v. Safeguard Int'l Partners, LLC, 438 F.3d 298, 306 (3d Cir. 2006).

While neither party has bothered to supply us with the complaint in the state action involving these parties,[12] it appears that the state action involves an allegation by Asteria of breach of contract and unjust enrichment claims against Frank and Domingo Rodriguez. See Miguelina Mem. at 15 ("Miguelina and Milagros are defendants in this action and not a part of the State Action.") (emphasis in original); id. at 16 ("The claims that [Asteria] has sufficiently stated in this case -- the breach-of-contract and unjust-enrichment claims -- are exactly

_____

[12] Miguelina cites to the Amended Complaint in the State Action, identifying it as Exhibit C to her motion, but the docket reveals no exhibits in support of this motion.

the same as those asserted in the State Action.") (emphasis in original); Pl.'s Resp. at 21 ("The federal case included tort claims which are not part of the state suit.").  Since we have now dismissed all claims against Domingo and Milagros Rodriguez, as well as Asteria's claims for conversion, fraud, and intentional infliction of emotional distress, the only remaining difference between the state and federal actions appears to be that Domingo is named as a defendant in the state action while Miguelina is a defendant in this action.  Given this minor difference, we are willing to assume -- provisionally -- that the identities of parties, claims, and time are sufficiently met here to permit us to consider whether the second prong of <u>Colorado River</u> is satisfied.

Under this second prong, courts "look to a multi-factor test to determine whether 'extraordinary circumstances' meriting abstention are present": "'(1) [in an <u>in rem</u> case,] which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties.'" <u>Nationwide Mutual</u>, 571 F.3d at

41

308 (quoting Spring City Corp. v. Am. Bldgs. Co., 193 F.3d 165,

171 (3d Cir. 1999)) (brackets in original).  In applying this

test, "[n]o one factor is necessarily determinative; a carefully

considered judgment taking into account both the obligation to

exercise jurisdiction and the combination of factors counselling

against that exercise is required.  Only the clearest of

justifications will warrant dismissal."  Colorado River, 424 U.S.

at 818-19 (internal citations omitted).

Miguelina argues that this test favors abstention,

explaining that "[t]he first three factors are neutral,"

Miguelina Mem. at 17, and that "[t]he remaining three factors . .

. weigh in favor of abstention."  Id. at 18.  While it is true

that (1) Asteria initiated the state action at issue before this

federal action, (2) state law controls, and (3) we have no doubt

that the Pennsylvania state court will adequately protect the

parties' interests, this by itself does not suggest that

abstention is warranted under Colorado River.  As the Supreme

Court explained in Moses H. Cone Mem'l Hosp. v. Mercury Constr.

Corp., 460 U.S. 1, 25 (1983), "our task in cases such as this is

not to find some substantial reason for the exercise of federal

jurisdiction by the district court; rather, the task is to

ascertain whether there exist 'exceptional' circumstances, the

42

'clearest of justifications,' that can suffice under <u>Colorado</u>
<u>River</u> to justify the <u>surrender</u> of that jurisdiction." As the
Court emphasized, "[b]y far the most important factor in
[<u>Colorado River</u>] was the 'clear federal policy . . . [of]
avoidance of piecemeal adjudication of water rights in a river
system.'" <u>Id.</u> at 16 (quoting <u>Colorado River</u>, 424 U.S. at 819)
(ellipsis, brackets and emphasis in original). Our Court of
Appeals has clarified that "the 'avoidance of piecemeal
litigation' factor is met . . . only when there is evidence of a
strong federal policy that all claims should be tried in the
state courts." <u>Ryan v. Johnson</u>, 115 F.3d 193, 197-98 (3d Cir.
1997). Since there is undoubtedly no such federal policy
applicable to this case, the third and paramount <u>Colorado River</u>
factor is not met here, which strongly militates against
abstention.

    As for the factors that Miguelina points to as favoring
abstention, our Court of Appeals has emphasized that "abstention
cannot be justified merely because a case arises entirely under
state law," <u>id.</u> at 199, and that "the mere fact that the state
forum is adequate does not counsel in favor of abstention." <u>Id.</u>
at 200. With respect to the fourth <u>Colorado River</u> factor, "when
a judgment sought is strictly in personam, both state and federal

courts with concurrent jurisdiction may proceed until judgment is obtained in one of them," <u>Marshall v. Lauriault</u>, 372 F.3d 175, 183 (3d Cir. 2004), whereupon "principles of <u>res judicata</u> resolv[e] the effect of a judgment in one court upon the other." <u>Id.</u> (citing <u>In re Diet Drugs</u>, 282 F.3d 220, 234 (3d Cir. 2002)). As a result, none of the three factors that Miguelina identifies tips strongly in favor of abstention, and certainly not so powerfully as to constitute "exceptional" circumstances that furnish "the clearest of justifications" in favor of abstention.

We will thus decline to abstain from exercising jurisdiction over this case pursuant to <u>Colorado River</u>.

BY THE COURT:

__\s\Stewart Dalzell